**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHAEL G. REID,**

                **Plaintiff,**

   **-vs-**                                                      **Case No.  6:05-cv-594-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**MEMORANDUM OF DECISION**

Plaintiff Michael G. Reid ("Reid") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. *See* Doc. No. 1 ("Complaint"). For the reasons set forth below, the Commissioner's decision is **REMANDED under sentence six of 42 U.S.C. § 405(g)**.

**I.    BACKGROUND**

Reid was born on July 1, 1946.  R. 51, 250.  On June 1, 2001, the date of Reid's alleged onset of disability, he was fifty-five (55) years of age.  R. 51.  Reid received his college degree in 1973, and his past relevant work experience includes military service as well as being employed as vice president of engineering/manufacturing and director of engineering for at least eighteen years.  R. 62, 67, 252.

From October 8, 1996 through January 29, 2002, Reid was treated for heart problems by Dr. Sunil Kapoor.  R. 98-138.  On October 8, 1996, Reid was admitted to Winter Park Memorial Hospital for congestive heart failure, pulmonary edema, atrial fibrillation, sleep apnea, obesity,

and a possible myocardial infarction. R. 133-38. After being properly medicated, Reid's condition markedly improved and he was discharged from the hospital on October 15, 1996. R. 133-34. On January 10, 1997, Reid underwent an unsuccessful elective cardioversion procedure, but his atrial fibrillation remained. R. 108. Dr. Kapoor recommended that he remain on anticoagulation medicine. *Id*. On January 22, 2002, Reid presented to Dr. Kapoor suffering from hypertension with hypertensive heart disease and congestive heart failure. R. 99. On January 29, 2002, an echocardiogram showed mild left ventricular hypertrophy, mild left ventricular enlargement, left atrial enlargement, overall left ventricular ejection fraction of approximately 45-50%, mild right ventricular and atrial enlargement, and mild mitral regurgitation. R. 98. On October 4, 2004, a follow up echocardiogram was taken by Dr. Kapoor and it revealed that Reid's left ventricular ejection fraction was impaired by 38%. R. 242.

From September 9, 1997 through October 15, 2001, Reid was treated by Dr. Daniel J. Koretz. R. 139-168. Dr. Koretz diagnosed Reid as having atrial fibrillation, hypertension, congestive heart failure, obesity, diabetes, albuminuria, sleep apnea, and hyperlipidemia. R. 142. During his treatment, Reid was prescribed numerous medications to combat his conditions. R. 142.

Sometime before August 16, 2000, Reid was placed on CPAP treatment for his sleep apena. R. 150. On September 26, 2000, Reid was referred by Dr. Jay Roberts to the Sleep Disorder Center of Rochester. R. 219-21. The study revealed that Reid suffers from severe sleep apnea resulting in 102 events per hour of sleep and, as a result, he experiences fatigue throughout the day at home and at work. R. 219-27.

Dr. Matthew Rosen treated Reid for type II diabetes, atrial fibrillation, and hypertension from December 28, 2001 through October 31, 2002.  R. 169-194.  On May 24, 2002, Reid applied for Social Security Disability Insurance benefits alleging a disability onset date of June 1, 2001.  R. 51-53.  Reid alleged his disability was due to atrial fibrillation, type II diabetes, hypertensions, obesity, and sleep apnea.  R. 61.  Dr. Rosen treated Reid's condition with various medications and, on October 16, 2002, Dr. Rosen reported that Reid was compliant with his treatment.  R. 173.  Reid reported that he was experiencing constant sweating that was interfering with his appearance at job interviews, but that his symptoms had nothing to do with anxiety.  R. 173.  Reid stated that he was not experiencing chest pain.  R. 173.  Dr. Rosen reported that the atrial fibrillation persisted.  R. 173

On September 2, 2002, Dr. David Z. Zitkay, a state agency consultant, provided a Physical Residual Functional Capacity Assessment ("RFC") on Reid.  R. 195-202.  Dr. Zitkay made a diagnosis of cardiomyopathy, atrial fibrillation, diabetes, and high blood pressure.  R. 195.  Dr. Zitkay opined that Reid's condition resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum twenty pounds; (2) frequently lifting and/or carrying a maximum of ten pounds; (3) standing and/or walk walking about six hours in an eight hour workday; (4) siting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling.  R. 196.  Dr. Zitkay further opined that Reid had no postural, manipulative, visual, communicative, or environmental limitations.  R. 197-99.  Dr. Zitkay stated that Reid's medically determinable impairments were credible and consistent with his symptoms.  R. 200.

On September 10, 2002, Reid's application for Social Security Disability Benefits was denied. R. 27-28. On September 24, 2002, Reid filed a Request for Reconsideration which was denied on November 20, 2002. R. 29, 31-32. On December 19, 2002, Reid requested a hearing by an Administrative Law Judge ("ALJ"). R. 33.

On March 15, 2004, Reid underwent a consultative cardiovascular evaluation by Dr. Michael A. Nocero, Jr., a board-certified specialist in cardiovascular medicine. R. 211-13. Reid was fifty-seven years old at the time of the evaluation. R. 211. Dr. Nocero summarized Reid's medical history, including his medications, and noted that Reid had not been in congestive heart failure since 1996. R. 211. Dr. Nocero offered the following opinion:

> It is my opinion as a board certified specialist in cardiovascular medicine and within a reasonable degree of medical certainty that this patient is not exemplifying any symptoms to suggest underlying severe coronary artery disease. He has not had angina nor has he had any objective testing to suggest coronary artery disease. I refer to his 1995 SPECT scan, which did not indicate reversible myocardial ischemia. He does not have a history of hypertension cardiovascular disease and morbid obesity. He has determinations of blood pressure consistently in the diastolic range of 100 to 110, and I would give him a Class I impairment of the whole person of 10% because of this.
>
> . . .
>
> The claimant also has a history of fixed atrial fibrillation, which necessitates him taking Coumadin therapy, and did precipitate in 1996 one episode of congestive heart failure due to a rapid heart rate due to the atrial fibrillation. I would give him a Class I impairment of the whole person of 10% due to this arrhythmia.
>
> . . .
>
> In conclusion, the most concerning feature of this claimant's history is the symptoms of easy fatigability and excessive sleepiness particularly when he drives a car. With his morbid obesity, he may be a classic example of Pickwickian syndrome with aberrations in his arterial blood gases during his waking hours. This may also be party of the syndrome of sleep apena and

> he may well benefit from a full pulmonary consultation and sleep study (somnogram) to further determine if indeed he has sleep apnea. I am not a board-certified pulmonologist so I cannot make any profession comments about physical impairment of his whole person due to sleep apnea and I would waive that evaluation to a board-certified pulmonologist.

R. 212. On March 17, 2004, Dr. Nocero also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). R. 214-17. Dr. Nocero stated that Reid would have no exertional limitations in lifting/carrying, standing and/or walking, sitting, or pushing and pulling. R. 214-15. During an eight hour workday, Dr. Nocero stated that Reid could frequently climb, balance, kneel, crouch, crawl, and/or stoop. R. 215. Additionally, Dr. Nocero opined that Reid's condition would not limit his manipulative and visual/communicative functioning and that Reid's condition would not produce any environmental limitations. R. 216-17.

On March 31, 2004, a hearing was held before the ALJ, James Ciaravino. R. 243-272. Attorney J. Michael Matthews represented Reid at the hearing. R. 243. Reid was the only person to testify at the hearing. R. 243-272. At the hearing, Reid testified that he left his job in June of 2001 after the company was sold. R. 253. Reid stated he still held out hope that he could return to work. R. 255. In 2003, Reid briefly did some consulting work, but was let go. R. 265.

Regarding atrial fibrillation, Reid testified that it is an arrhythmia of the atria and happens all the time. R. 258. "My heartbeat is not . . . consistent." *Id*. Reid stated that in 1991 his atrial fibrillation led to congestive heart failure, and that he has been suffering from atrial fibrillation ever since. R. 258-59. Reid acknowledged that the atrial fibrillation was not "necessarily as life threatening as some of the others," but it has caused him fatigue. R. 260. Regarding sleep apnea,

Reid testified that it could be the cause of the atrial fibrillation. R. 260. Reid also stated that he was not experiencing any chest pains. R. 270.

At the hearing, the ALJ stated that Dr. Nocero's report indicated that Reid's heart problems were really not that concerning and "generally pretty good news." R. 260-61. Reid responded: "From my standpoint it's a mixed emotion I suppose but the basis of the thing is I - - is yes, I don't seem to have quite the heart problem but it has - - nothing is explained to me why I'm having some of these other problems. I've taken things. I'm doing medicines and it doesn't seem to be getting any better. It seems to be getting somewhat worse." R. 261. Additionally, the ALJ stated that Reid should be seen by an internist pulmonologist based upon Dr. Nocero's report. R. 267-68.

Reid stated when he attempted to do consulting work he kept "[r]unning out of gas." R. 265. "[I]t's been a hard thing to come to a realization but the basis of that was I can't do ten, twelve hours anymore." R. 265. The ALJ asked if he could do six to eight hours of work a day and Reid responded: "Well, that's - - that'll be great." R. 266. The hearing concluded when the ALJ decided to send Reid to a pulmonologist.

On June 19, 2004, Reid underwent a state agency consultative evaluation, including pulmonary function studies, by Dr. Ed Magee regarding his hypertension, diabetes, atrial fibrillation, sleep apnea, obesity, fatigue, and shortness of breath. R. 230-36. Dr. Magee summarized Reid's medical history and stated the following:

> The patient's last job was in June of 2001 where he functioned as an engineer. At that time, he was laid off and has not worked ever since. He states that he can dress and feed himself, stand about four to five minutes at a time, usually stands one hour out of an eight hour period during the day, can walk about a quarter mile on level ground, sit for about 20 minutes at a time, lift 50 or 60

> pounds without difficulty, and drive a car for an hour. Household chores include sweeping, mopping, vacuuming, cooking, uses a dishwasher for dishes, shopping, can climb a few stairs, and mows the grass with the riding lawnmower.

R. 231. Dr. Magee's impressions were as follows:

> 1.  Hypertension. The patient has poor control today and at home given the fact that he is diabetic. His blood pressure should be less than 130/80. This is discussed at length. His physician should be more aggressive with his antihypertensive therapy. He does not have any systemic manifestations of his disease evident on today's exam.
> 2.  Diabetes. The patient does seem to have good control of his fasting sugars. Hemoglobin ALC is not available for evaluation. He has not had any problems with diabetic ulcerations or received any laser treatments. It seems to be well controlled.
> 3.  Atrial Fibrillation. This is evident on today's exam. Hard to assess if this gentleman has any underlying congestive heart failure secondary to poor perfusion from his atrial fibrillation and this being responsible for his decreased exercise tolerance. However, he has good controls of his PT INRS. It is recommended that he stay on this therapy to avoid thromboembolic disease.
> 4.  Morbid obesity. This patient could stand to lose approximately 150 to 200 pounds easily. This would greatly improved [sic] his exercise tolerance and put him at lower risk for cardiac event.
> 5.  History of sleep apnea. The patient was diagnosed with severe sleep apnea back in 2000. It was recommended that this patient continue to use a CPAP machine throughout the night. This would improve his level of fatigue and daytime somnolence allowing him to get more restful stage 3 and stage 4 sleep.

R. 233. On August 16, 2004, Dr. Magee completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). R. 237-40. Dr. Magee opined that Reid's condition would produce certain exertional limitations, including occasionally lifting and/or carrying a maximum of fifty pounds and frequently lifting and/or carrying a maximum of twenty-five pounds. R. 237. Dr. Magee stated that Reid would have no exertional limitations in standing and/or walking,

sitting, and pushing or pulling. R. 237-38. Dr. Magee opined that Reid could frequently climb, balance, kneel, crouch, crawl, and stoop during a normal eight hour workday. R. 238. Regarding manipulative, visual, communicative, and environment limitations, Dr. Magee stated that Reid's condition would not produce any limitation. R. 239-40.

On September 9, 2004, Reid's wife sent a letter to the ALJ disputing Dr. Magee's Medical Source Statement of Ability to do Work-Related Activities. R. 96-97. According to Mrs. Reid, he is not able to do a full day's manual labor. *Id*.

> He tried to assist friends in storm cleanup after Hurricane Charley and ended up with walking pneumonia the Monday after the storm. Tying to live without power, without air conditioning or his breathing machine, he was up most of the night, panting and drenched in sweat, trying to find a way to breathe. We had to put him in a hotel room until our power was restored.

R. 96. Regarding how his impairments have affected his daily living, Mrs. Reid stated:

> The quality of Mike's daily life has undergone a drastic change in the past few years. He is unable to function in his accustomed employment, as he falls asleep frequently and inappropriately, has little energy and staying power, has breathing and sweating problems, bruising and bursitis events, has trouble with travel and no longer presents the "image" of a corporate executive. . . . He is so frustrated by his inability to perform routine work around the house, help the kids with various things (like moving!), participate in physical activities, help friends with various projects and enjoy one of his lifetime favorites, golf.

R. 96-97. Mrs. Reid's statement was not explicitly mentioned by the ALJ in his decision.

On December 6, 2004, the ALJ issued a decision that Reid was not disabled finding the following:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(j) of the Social Security Act and is insured for benefits through the date of this decision.

  2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

  3.  The claimant's hypertensive cardiovascular disease with a history of remote congestive heart failure and artial fibrillation, diabetes type II, morbid obesity and sleep apnea are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).

  4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

  5.  The undersigned finds the claimant's allegations regarding his limitations are generally credible in light of the objective clinical and laboratory evidence of record.

  6.  The claimant has the residual functional capacity to lift and carry no more than a maximum of 50 pounds occasionally and 25 pounds frequently, sit, stand, and walk about 6 hours per 8 hour workday, with frequent limitations of his ability climb, balance, kneel, crouch, crawl, and stoop.

  7.  The claimant's past relevant work as a corporate executive for a manufacturing company did not require the performance of work-related activities precluded by his residual functional capacity.

  8.  The claimant's medically determinable hypertensive cardiovascular disease with a history of remote congestive heart failure and atrial fibrillation, diabetes type II, morbid obesity and sleep apnea do not prevent the claimant from performing his past relevant work.

  9.  The claimant was not under a "disability."

R. 17-18. On December 8, 2004, Reid requested a review by the Appeals Council, and on March 10, 2005, the Appeals Council denied review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security. R. 4-7.

  On January 27, 2005, Dr. Rosen referred Reid for x-rays of his lumbar spine and left knee. Doc. Nos. 30-3, 30-4. According to Reid, the x-rays revealed moderate degenerative changes to the lumbar spine and severe osteoarthritis in the left knee. *Id.* Subsequently, Reid filed a new application for disability benefits which was granted by the Commissioner on

January 22, 2006. Doc No. 30-2.[1] According to the Award of Benefits provided to the Court by Reid, the disability onset date established by the Commissioner for Reid's subsequent application was March 11, 2005, the day after the Appeals Council denied review of the present case. *Id*.

## II.   THE PARTIES' POSITIONS

Reid assigns two errors to the ALJ. First, Reid claims that the ALJ lacked substantial evidence to determine that Reid has the RFC to perform his past relevant work. Second, Reid claims the ALJ erred as a matter of law by failing to mention and/or discredit Mrs. Reid's lay testimony in his decision. Finally, Reid argues that the case should be remanded under sentence six of 42 U.S.C. § 405(g) for the ALJ to consider new evidence.

The Commissioner argues that the substantial evidence existed for the ALJ to determine that Reid had the RFC to perform his past relevant work. The Commissioner also maintains that the ALJ properly considered Mrs. Reid's lay testimony and rejected it implicitly. Furthermore, the Commissioner asserts the ALJ's determination that Reid's allegations of his limitations were generally credible was "likely a typographical error." Finally, the Commissioner argues that the matter should not be remanded pursuant to sentence six of Section 405(g) because the evidence, while new, is not material to Reid's condition and would not have changed the ALJ's decision.

## III.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is

---

[1] The date of Reid's subsequent application for benefits is not in the record.

determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

11

consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 CFR §§ 404.1520(e),

416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the clamant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

In the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of

work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B. THE STANDARD OF REVIEW

"The sixth sentence of Section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Ingram v. Astrue*, 496 F.3d 1253, 1261 (11th Cir. 2007). A sentence six remand is limited to cases where new evidence is presented for the first time in the district court. *Ingram*, 496 F. 3d at 1267 ("Our settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review."). The district court may remand under sentence six if the claimant establishes: 1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause

for failure to submit the evidence at the administrative level. *See Jackson v. Chater*, 99 F.3d 1086, 1090-92 (11 t h Cir. 1996); *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.

> When a case is remanded [under sentence six], 'the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision.' If the case is remanded by the Appeals Council to the administrative law judge, the process starts over again. If the case is decided by the Appeals Council, then that decision is subject to judicial review.

*Ingram*, 496 F. 3d at 1261. [2]

## IV. ANALYSIS

### A. **Whether Reid Presented New Evidence Warranting Sentence Six Remand**

Reid argues that the evidence is new because it arose after the ALJ's decision and there is good cause for not bringing the evidence to the ALJ's attention because the evidence did not exist at the time of the hearing. Doc. No. 30 at 16. (*citing Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001)). According to Reid, the new evidence is material because there is a reasonable possibility that it would change the administrative outcome. *Id*. (*citing Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). Reid maintains that the submission of the January 27, 2005 x-rays provided the

---

[2] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id*. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

15

basis for the approval of his subsequent application at the initial stage. Doc. No. 30 at 16-17. "These x-rays are both dated January 27, 2005, within 60 days of the ALJ [sic] denial in this case, dated December 6, 2004. The x-rays obviously relate back to the date of the hearing decisions as they describe degenerative conditions which Mr. Reid did not just suddenly develop in January 2005." *Id*. at 17 (citations omitted). Reid argues that the x-rays offer objective medical evidence for his symptoms of pain and functional limitations. *Id*. at 18. Moreover, Reid maintains that the new evidence would change the ALJ's opinion regarding Reid's RFC, especially as it relates to his exertional limitations. *Id*. Thus, Reid argues the case should be remanded to the Commissioner for consideration of the new evidence.

The Commissioner argues that the evidence, while new, would not change the ALJ's decision that Reid could perform his past relevant work. Doc. No. 34 at 6. According to the Commissioner, that the x-rays did not affect the subsequent award of benefits because Reid was ultimately awarded benefits solely on the basis of his cardiomyopathy and obesity. *Id*. at 7.[3] Thus, the Commissioner argues there is no basis to remand under sentence six. *Id*. at 7.

The record before the ALJ did not contain any evidence regarding degenerative defects in Reid's lumbar spin or severe osteoarthritis in his right knee. Thus, the x-rays present non-cumulative evidence not contained in the administrative record and meet the "new" evidence element for a sentence six remand. *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988). Additionally, the "good cause" element is satisfied when the evidence did not exist at the time of the administrative proceedings. *Id*. The Court finds that because the evidence did not exist at

---

[3] The Commissioner did not provide a citation or attach any documents to support this statement. The Court notes, that Reid suffered from obesity and cardiomyopathy prior to March 11, 2005. *See* R. 195, 223.

16

the time of the hearing and was not presented to the Appeals Council, Reid has satisfied the "good cause" element.

In *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987), the Eleventh Circuit held that new evidence met the "material" element where new reports offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work. In the present case, the ALJ and the consultative physicians did not have the benefit of the x-rays when determining or evaluating Reid's RFC. The degenerative condition in Reid's lumbar spine and severe osteoarthritis in his right knee could reasonably be expected to affect the ALJ's finding regarding his RFC. While the Court makes no finding regarding what, if any, affect the x-rays may have, there is a reasonable possibility that the new evidence may change the administrative outcome. Moreover, to successfully rebut an argument that new evidence is material, it is not enough for the Commissioner to merely state that the evidence would not change the outcome below. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Thus, the Court finds that the new evidence meets the "material" standard under sentence six.

In *Ingram*, the Eleventh Circuit noted that "evidence first presented to the district court could not be considered for purposes of a sentence four remand because 'a reviewing court is limited to the certified administrative record in examining the evidence.'" 496 F.3d at 1267-68. Therefore, the Court finds that because Reid has satisfied the necessary elements for a sentence six remand, it is unnecessary and premature to consider the parties other arguments until the Commissioner has an opportunity to evaluate the new evidence.

## V. **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED under sentence six of Section 405(g)**. The Clerk is directed to administratively close the case, but the Court will retain jurisdiction. Once the remand proceedings have concluded, the parties must file modified findings of fact, including an updated certified administrative record, with the Court, and, if necessary, the Court will then enter a judgment.

**DONE and ORDERED** in Orlando, Florida on September 15, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Sarah H. Bohr
Bohr & Harrington, LLC
2337 Seminole Road
Atlantic Beach, FL 32233

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia       30303-8920

The Honorable Edward James Ciaravino
c/o Social Security Administration
Office of Hearings and Appeals

Suite #300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801.